**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

In re:

SARI JAMES SIMPSON,

Address:    1013 North 35th Street
Richmond, VA 23223

DEBTOR(S).

U.S. BANK, NATIONAL ASSOCIATION, AS
TRUSTEE UNDER THE POOLING AND
SERVICING AGREEMENT DATED AS OF
MARCH 1, 2007, GSAMP TRUST 2007- HE2,
MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2007-HE2
        PLAINTIFF,

v.

SARI JAMES SIMPSON,
DEBTOR(S)
CARL M. BATES,
TRUSTEE

    DEFENDANTS.

CASE NO: 14-36798-KRH

CHAPTER 13

**NOTICE OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

    U.S. Bank, National Association, as Trustee under the Pooling and Servicing Agreement dated as of March 1, 2007, GSAMP Trust 2007- HE2, Mortgage Pass-Through Certificates, Series 2007-HE2, a creditor in this case, has filed papers with the court to obtain relief from the automatic stay of the Bankruptcy Code with regard to certain property more particularly described in those papers which are attached.

    **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

    If you do not want the Court to grant this creditor relief from the provisions of the automatic stay of the Bankruptcy Code, or if you want the Court to consider your views on the Motion for relief from the automatic stay, then on or before **January 28, 2016**, you or your attorney must:

File with the Court, at the address shown below, a written response pursuant to Local Bankruptcy Rules 4001(a)-1(C) and 9013-1(H). If you mail your response to the Court for filing, you must mail it early enough so the Court will **receive** it on or before the date stated above.

> United States Bankruptcy Court
> 701 East Broad Street,
> Suite 4000
> Richmond, VA 23219

You must also mail a copy of any such response to:

> M. Christine Maggard, Esquire
> Brock & Scott, PLLC
> 484 Viking Dr., Ste 203
> Virginia Beach, VA 23452

Attend the preliminary hearing that will be conducted in the Richmond Division of the US Bankruptcy Court, U.S. Bankruptcy Court **701 East Broad Street, Richmond, VA 23219 on February 10, 2016 at 11:00 AM in Courtroom 5000.**

If no timely response has been filed opposing the relief requested, the Court may grant the relief requested in the Motion from Relief from Stay.

If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sough in the Motion for Relief from Automatic Stay and may enter an Order granting the relief.

Date: <u>January 14, 2016</u>            Signature:    <u>/s/M. Christine Maggard</u>
                                        Name:        M. Christine Maggard, VSB# 33824
                                                     Brock & Scott, PLLC
                                                     484 Viking Dr. Ste 203
                                                     Virginia Beach, VA 23452
                                                     757-213-2959 (x3023)
                                                     <u>vaecf@brockandscott.com</u>

CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2016, a true copy of the foregoing Notice of Motion for Relief from the Automatic Stay was submitted for electronic transmittal or mailed, first class, postage prepaid to:

Nnika E. White
9101 Midlothian Turnpike
Suite 800
Richmond, VA 23235

Carl M. Bates
P. O. Box 1819
Richmond, VA 23218

Sari James Simpson
1013 North 35th Street
Richmond, VA 23223

/s/ M. Christine Maggard
M. Christine Maggard, VSB# 33824
Brock & Scott, PLLC
484 Viking Dr., Ste 203
Virginia Beach, VA 23452

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | |
|---|---|
| In re: | CASE NO: 14-36798-KRH |
| SARI JAMES SIMPSON, | |
| Address: 1013 North 35th Street | CHAPTER 13 |
| Richmond, VA 23223 | |
| DEBTOR(S). | |

U.S. BANK, NATIONAL ASSOCIATION, AS
TRUSTEE UNDER THE POOLING AND
SERVICING AGREEMENT DATED AS OF
MARCH 1, 2007, GSAMP TRUST 2007- HE2,
MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2007-HE2
     PLAINTIFF,

v.

SARI JAMES SIMPSON, DEBTOR(S)
CARL M. BATES, TRUSTEE

   DEFENDANTS.

## MOTION FOR RELIEF FROM AUTOMATIC STAY

**TO ALL DEFENDANTS:**

     **Pursuant to Rule 4001(a)-1(C) of the Local Rules of the United States Bankruptcy Court of the Eastern District of Virginia, you have fourteen (14) days from January 14, 2016, the date of service of this Motion upon you, to file a written response thereto and you must file such response with the Clerk of the United States Bankruptcy Court, U.S. Bankruptcy Court 701 East Broad Street, Suite 4000, Richmond, VA 23219 and serve a copy of same upon the Plaintiff's attorney, M. Christine Maggard, at 484 Viking Dr. Suite 203, Virginia Beach, VA 23452.**

M. Christine Maggard, VSB# 33824
Brock & Scott, PLLC
484 Viking Dr., Ste 203
Virginia Beach, VA 23452
757-213-2959 Ext 3023 (paralegal)
vaecf@brockandscott.com

Attorney for U.S. Bank, National Association, as Trustee under the Pooling and Servicing Agreement dated as of March 1, 2007, GSAMP Trust 2007- HE2, Mortgage Pass-Through Certificates, Series 2007-HE2

TO THE HONORABLE KEVIN R. HUENNEKENS:

Your Plaintiff, U.S. Bank, National Association, as Trustee under the Pooling and Servicing Agreement dated as of March 1, 2007, GSAMP Trust 2007- HE2, Mortgage Pass-Through Certificates, Series 2007-HE2, respectfully represents as follows:

1. That this is a core proceeding within the meaning of the Bankruptcy Code and Rules.

2. That on December 26, 2014, the above-named Debtors filed a Petition in this Court.

3. That Carl M. Bates was appointed Trustee of the property, has qualified and is now acting.

4. That at the time of the filing of the Debtor's petition herein, the Debtor had an ownership interest in certain real property and improvements having a street address of 1013 N 35th St., Richmond, VA 23223, located in Richmond City, Virginia, and more particularly described as follows:

   ALL THAT PIECE OR PARCEL OF LAND WITH ALL IMPROVEMENTS THEREON, KNOWN AS NO. 1013 NORTH 35TH STREET (FORMERLY DICKERSON STREET) LYING AND BEING IN THE CITY OF RICHMOND, VIRGINIA, SITUATED ON THE SOUTH LINE OF 35TH STREET, AND BOUNDED AND DESCRIBED AS FOLLOWS:

   BEGINNING AT A POINT ON THE SOUTH LINE OF 35TH STREET DISTANT 30 FEET WEST OF ITS INTERSECTION WITH THE WEST LINE OFBLAKIE STREET, THENCE RUNNING WESTWARDLY ALONG AND FRONTING 30 FEET ON THE SOUTH LINE OF 35TH STREET, AND THEN EXTENDING BACK SOUTHWARDLY FROM SAID FRONT BETWEEN LINES PARALLEL TO BLAKIE STREET 125 FEET TO AN ALLEY IN THE REAR 14 FEET WIDE.

   BEING THE SAME REAL ESTATE CONVEYED TO SARI SIMPSON, UNMARRIED, AND CHARLES WALKER AND CANDICE WALKER, HUSBAND AND WIFE, BY DEED FROM LILLIE S. HARRIS, DATED JANUARY 17, 2007, AND RECORDED IN THE CLERK'S OFFICE, CIRCUIT COURT, CITY OF RICHMOND, VIRGINIA, IMMEDIATELY PRIOR TO AND SIMULTANEOUSLY HEREWITH.

5. That the Plaintiff is the holder of a Note dated January 22, 2007, in the original principal

amount of $166,400.00 with interest thereon from said date at the rate of 9.85% per anum, secured by a Deed of Trust on said real property and improvements recorded in the Clerk's Office of the Circuit Court of Richmond City, Virginia, on which there is an approximate payoff balance of $184,960.72 as of December 21, 2015. True copies of the Deed of Trust and Note are attached hereto and incorporated by reference as Exhibits "A" and "B", respectively.

6. U.S. Bank, National Association, as Trustee under the Pooling and Servicing Agreement dated as of March 1, 2007, GSAMP Trust 2007- HE2, Mortgage Pass-Through Certificates, Series 2007-HE2 has the right to foreclose because: U.S. Bank, National Association, as Trustee under the Pooling and Servicing Agreement dated as of March 1, 2007, GSAMP Trust 2007- HE2, Mortgage Pass-Through Certificates, Series 2007-HE2, is the original mortgagee or beneficiary or assignee of the security instrument for the referenced loan. The promissory note is either made payable to U.S. Bank, National Association, as Trustee under the Pooling and Servicing Agreement dated as of March 1, 2007, GSAMP Trust 2007- HE2, Mortgage Pass-Through Certificates, Series 2007-HE2 or has been duly endorsed.

7. The Debtor has defaulted in the mortgage payments to be made outside of the plan.  Upon information and belief, the amount of default, exclusive of fees and costs, is as follows:

| | | | | | |
|---|---|---|---|---|---|
| 9 | payments @ (4/15 - 12/15) | $ | 883.36 | $ | 7,950.24 |
| | suspense | | | $ | 631.26 |
| | **Total Delinquency** | | | **$** | **7,318.98** |

8. That in the event the Plaintiff is granted relief from stay hereunder, the Plaintiff, its agents

and/or representatives, requests that the Order granting said relief allow the Plaintiff, its

agents and/or representatives, to send communications, as necessary, to the Debtor,

including, but not limited to, notices required by applicable state law in connection with

applicable State Court foreclosure or other proceedings incident to the aforesaid real property

and improvements including and proceedings necessary to recover possession of same from

the Debtors.

9.   That the facts hereinabove alleged constitute cause for a grant of stay relief in favor of the

Plaintiff pursuant to the provisions of 11 USC §362(d).

WHEREFORE, Plaintiff prays that it be granted relief from the provisions of the automatic stay

of the Bankruptcy Code with regard to the above-described real property and improvements

including any act necessary to recover possession of same from the Debtor and that the stay of

such grant of relief imposed pursuant to the provisions of Rule 4001(a)(3) of the Bankruptcy

Rules be waived.  Plaintiff further prays that Ocwen Loan Servicing, LLC, through its agents,

servicers and representatives be permitted to contact Debtor(s) and/or Debtor's counsel for the

purpose of engaging in discussions and consideration for possible loss mitigation options,

solutions and/or resolutions with regard to the underlying mortgage and note, including, but not

limited to loan modification or other loss mitigation alternatives.

> Ocwen Loan Servicing, LLC, as servicer for
> U.S. Bank, National Association, as Trustee
> under the Pooling and Servicing Agreement
> dated as of March 1, 2007, GSAMP Trust
> 2007- HE2, Mortgage Pass-Through
> Certificates, Series 2007-HE2
>
> By: /s/M. Christine Maggard
> Of Counsel

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on <u>January 14, 2016</u>, a true copy of the foregoing Motion for Relief from the Automatic Stay was submitted for electronic transmittal or mailed, first class, postage prepaid to:

Nnika E. White
9101 Midlothian Turnpike
Suite 800
Richmond, VA 23235

Carl M. Bates
P. O. Box 1819
Richmond, VA 23218

Sari James Simpson
1013 North 35th Street
Richmond, VA 23223

/s/ M. Christine Maggard
M. Christine Maggard, VSB# 33824
Brock & Scott, PLLC
484 Viking Dr., Ste 203
Virginia Beach, VA 23452

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

IN RE:
SARI JAMES SIMPSON
          DEBTOR

U.S. BANK, NATIONAL ASSOCIATION,
AS TRUSTEE UNDER THE POOLING
AND SERVICING AGREEMENT DATED
AS OF MARCH 1, 2007, GSAMP TRUST
2007- HE2, MORTGAGE PASS-
THROUGH CERTIFICATES, SERIES
2007-HE2
PLAINTIFF,
v.

SARI JAMES SIMPSON, DEBTOR,
CARL M. BATES, TRUSTEE

DEFENDANTS.

**CASE NO.  14-36798-KRH
CHAPTER 13**

## DECLARATION IN SUPPORT OF
## MOTION FOR RELIEF FROM AUTOMATIC STAY

I, _____Javier Rivera_____, declare under penalty of perjury as follows:

1.    I am employed as a ____Contract Management Coordinator____ of Ocwen Loan Servicing,

LLC, as servicer for U.S. Bank, National Association, as Trustee under the Pooling and

Servicing Agreement dated as of March 1, 2007, GSAMP Trust 2007- HE2, Mortgage Pass-

Through Certificates, Series 2007-HE2 ("Movant") and am authorized to sign this declaration on

behalf of Ocwen Loan Servicing, LLC (hereinafter "Ocwen").  This declaration is provided in

support of the Motion for Relief from Stay (the "Motion") filed contemporaneously herewith.

2.    I make this declaration based upon my review of the records with regard to this

underlying loan transaction, which are kept in the ordinary course of business of Ocwen.  As part

of my job responsibilities for Ocwen, I have personal knowledge of and am familiar with the

types of records maintained by Ocwen in connection with the loan that is the subject of the

Motion (the "Loan") and the procedures for creating those types of records. I have access to and

have reviewed the books, records and files of Ocwen that pertain to the Loan and extensions of

credit given to Debtor(s) concerning the property securing such Loan.

3.      The information in this declaration is taken from Ocwen business records

regarding the Loan. The records are: (a) made at or near the time of the occurrence of the

matters recorded by persons with personal knowledge of the information in the business record,

or from information transmitted by persons with personal knowledge; (b) kept in the course of

Ocwen regularly conducted business activities; and (c) it is the regular practice of Ocwen to

make such records.

4.      The Debtor(s) Sari James Simpson aka Sari Simpson, Co-Debtors Charles

Walker, and Candice Walker has/have executed and delivered or is/are otherwise obligated with

respect to that certain promissory note referenced in the Motion (the "Note"). Pursuant to that

certain Deed of Trust referenced in the Motion (the Deed of Trust), all obligations of the

Debtor(s) under and with respect to the Note and the Deed of Trust are secured by the property

referenced in the Motion.

5.      As of December 21, 2015, there are one or more defaults in paying Debtor(s) post-

petition amounts due with respect to the Note.

6.      As of December 21, 2015, the unpaid principal balance of the Note is

$178,171.68.

7.      The following chart sets forth those post-petition payments, due pursuant to the

terms of the Note, that have been missed by the Debtor(s) as of December 21, 2015:

| Number of Missed Payments | From | To | Monthly Missed Principal and Interest | Monthly Missed Escrow (if applicable) | Monthly Payment Amount | Total Amounts Delinquent |
|---|---|---|---|---|---|---|
| 9 | April 1, 2015 | December 1, 2015 | $619.62 | $263.74 | $883.36 | $7,950.24 |
| | | | | | Less post-petition partial payments (suspense balance): $631.26 | |

Total: <u>$7,318.98</u>**

As of December 21, 2015, the total post-petition arrearage/delinquency is $7,318.98, consisting

of (i) the foregoing total of missed post-petition payments in the amount of $7,318.98, plus (ii)

the following post-petition fees:

| Description | Amount |
|---|---|
| N/A | $0.00 |

8.    Attached hereto as an exhibit is a post-petition payment history.

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury under the laws of

the United States of America that the foregoing is true and correct.

Executed this 8th day of January, 2016.

Name: Javier Rivera

Title: Contract Management Coordinator

STATE OF FLORIDA

COUNTY OF PALM BEACH

The foregoing instrument was acknowledged and sworn before me Gary Van Soosten

this 8 day of JAN, 2016, by Javier Rivera

as a Contract Management Coordinator of Ocwen Loan Servicing, LLC, who is

personally known to me or who has produced _____ as identification.

Notary Public - State of Florida

My Commission Expires: 5-6-2018

GARY VAN SOOSTEN
Notary Public - State of Florida
My Comm. Expires May 6, 2018
Commission # FF 119831

Gary Van Soosten

| Name: | Sari James Simpson | | | | | | |
|---|---|---|---|---|---|---|---|
| **BK Case Number:** | 14-36798-KRH | | | | | | |
| **Filing Date:** | 12/26/2014 | | | | | | |
| **Post First Due:** | 1/1/2015 | | | | **Completed By:** | | Peddanna |
| **Post-Petition Due** | **Date Received** | **Amount Received** | **Amount Applied** | **Suspense Application** | | **Suspense Balance** | **Comments** |
| 01/01/15 | 3/11/2015 | $ 840.00 | $ 840.00 | $ - | | $ - | Short payment accepted |
| | 7/8/2015 | $ 799.98 | | $ 799.98 | | $ 799.98 | |
| 02/01/15 | 8/31/2015 | $ 799.00 | $ 883.36 | $ (84.36) | | $ 715.62 | |
| 03/01/15 | 9/29/2015 | $ 799.00 | $ 883.36 | $ (84.36) | | $ 631.26 | |

**EXHIBIT**

| Name: | Sari James Simpson |
|---|---|
| BK Case Number: | |
| Filing Date: | |
| Completed by: | Peddanna |

| Due Date | Total Payment | Principal | Interest | Escrow | Optional Products | NOPC Filed Date |
|---|---|---|---|---|---|---|
| 04/01/15 | $ 883.36 | $ 324.82 | $ 294.80 | $ 263.74 | $ - | |
| 05/01/15 | $ 883.36 | $ 325.36 | $ 294.26 | $ 263.74 | $ - | |
| 06/01/15 | $ 883.36 | $ 325.91 | $ 293.71 | $ 263.74 | $ - | |
| 07/01/15 | $ 883.36 | $ 326.45 | $ 293.17 | $ 263.74 | $ - | |
| 08/01/15 | $ 883.36 | $ 326.99 | $ 292.63 | $ 263.74 | $ - | |
| 09/01/15 | $ 883.36 | $ 327.54 | $ 292.08 | $ 263.74 | $ - | |
| 10/01/15 | $ 883.36 | $ 328.08 | $ 291.54 | $ 263.74 | $ - | |
| 11/01/15 | $ 883.36 | $ 328.63 | $ 290.99 | $ 263.74 | $ - | |
| 12/01/15 | $ 883.36 | $ 329.18 | $ 290.44 | $ 263.74 | $ - | |
| Total Due | $ 7,950.24 | $ 2,942.96 | $ 2,633.62 | $ 2,373.66 | $ - | |

**EXHIBIT**

Mail To: Community Title
P.O. Box 4444
Midlothian, VA 23112

PG 855 JAN 24 B

M/ 15.02

~~Return To:~~
New Century Mortgage Corporation
18400 Von Karman, Ste 1000
Irvine, CA 92612

Tax Map Reference #:
E000-1108-007
RPC/Parcel ID #:
E000-1108-007

Prepared By:
New Century Mortgage Corporation
18400 Von Karman, Ste 1000
Irvine, CA 92612

07 - 02817

——————————— [Space Above This Line For Recording Data] ———————————

# DEED OF TRUST
MIN ████████

The following information, as further defined below, is provided in accordance with Virginia law:

This Deed of Trust is given by SARI SIMPSON and CHARLES WALKER and CANDICE WALKER

, as

Borrower (trustor), to Stephen C. Conte
300 W Main Street, Richmond, VA 23200

, as

Trustee, for the benefit of Mortgage Electronic Registration Systems, Inc. as beneficiary.

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

VIRGINIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Form 3047  1/01

Wolters Kluwer Financial Services
VMP ®-6A(VA) (0507).01
Page 1 of 15                    Initials: ___

Exhibit A

PG 856   JAN 24 6

(A) "Security Instrument" means this document, which is dated  January 22, 2007
together with all Riders to this document.

(B) "Borrower" is SARI SIMPSON and CHARLES WALKER and CANDICE WALKER

Borrower is the trustor under this Security Instrument.

(C) "Lender" is New Century Mortgage Corporation

Lender is a Corporation
organized and existing under the laws of California
Lender's address is 18400 Von Karman, Suite 1000, Irvine, CA 92612

(D) "Trustee" is Stephen C. Conte

Trustee (whether one or more persons) is a Virginia resident and/or a United States- or Virginia-chartered
corporation   whose   principal   office   is   located   in   Virginia.   Trustee's   address   is
300 W. Main Street, Richmond, VA. 23200
"Trustee" is Second Trustee Not Assigned

Trustee (whether one or more persons) is a Virginia resident and/or a United States- or Virginia-chartered
corporation   whose   principal   office   is   located   in   Virginia.   Trustee's   address   is
N/A

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary
under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated  January 22, 2007
The Note states that Borrower owes Lender ONE HUNDRED SIXTY-SIX THOUSAND FOUR HUNDRED
AND 00/100                                                                    Dollars
(U.S. $166,400.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than 02/01/2037               . The interest rate
stated in the Note is Nine And Eighty-five Hundredth(s)
                                                     percent (              9.850 %).
If this Security Instrument is an adjustable rate mortgage loan, this initial rate is subject to change in
accordance with the attached Adjustable Rate Rider.

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."

VMP ®-6A(VA) (0507).01              Page 2 of 15        Initials:          Form 3047  1/01

PG 857 JAN 24 6

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |

                                                    **Prepayment Rider, ARM Rider Addendum**

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

VMP ®-6A(VA) (0507).01                    Page 3 of 15                    Initials:                    Form 3047  1/01

PG  858 JAN 24 6

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County                                    [Type of Recording Jurisdiction]
of Richmond City                                [Name of Recording Jurisdiction]:
See Legal Description Attached Hereto and Made a Part Hereof

which currently has the address of 1013 N 35th Street

                                                                                    [Street]
Richmond/Richmond City                        [City/County], Virginia 23223        [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

Initials:

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such

amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the

payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or

Initials:

PG 862 JAN 246

condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage

Initials:

PG 863 JAN 24 B

Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

Initials:

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the

Initials:

VMP ®-6A(VA) (0507).01                    Page 10 of 15                    Form 3047   1/01

permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of

Initials:

Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

PG 867 JAN 24 6

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender or Trustee shall give to Borrower, the owner of the Property, and all other persons, notice of sale as required by Applicable Law. Trustee shall give public notice of sale by advertising, in accordance with Applicable Law, once a week for two successive weeks in a newspaper having general circulation in the county or city in which any part of the Property is located, and by such additional or any different form of advertisement the Trustee deems advisable. Trustee may sell the Property on the eighth day after the first advertisement or any day thereafter, but not later than 30 days following the last advertisement. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by advertising in accordance with Applicable Law. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property with special warranty of title. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to discharge the expenses of executing the trust, including a reasonable commission to Trustee; (b) to discharge all taxes, levies, and assessment, with costs and interest if these costs have priority over the lien of this Security Instrument, including the due pro rata thereof for the current year; (c) to discharge in the order of their priority, if any, the remaining debts and obligations secured by this Security Instrument, and any liens of record inferior to this Security Instrument under which sale is made, with lawful interest; and, (d) the residue of the proceeds shall be paid to Borrower or Borrower's assigns. Trustee shall not be required to take possession of the Property prior to the sale thereof or to deliver possession of the Property to the purchaser at the sale.**

PG 868 JAN 24 5

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**NOTICE: THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_Mindy R. Dixon_

_____

_Sari Simpson_ (Seal)
SARI SIMPSON                    -Borrower

_____

_Charles Walker_ (Seal)
CHARLES WALKER                  -Borrower

_____ (Seal)
                      -Borrower

_Candace Walker_ (Seal)
CANDACE WALKER                  -Borrower

_____ (Seal)          _____ (Seal)
                      -Borrower                              -Borrower

_____ (Seal)          _____ (Seal)
                      -Borrower                              -Borrower

VMP ®-6A(VA) (0507).01          Page 14 of 15          Form 3047   1/01

PG 869 JAN 24 5

**STATE OF VIRGINIA,**  Chesterfield  **County, ss:**

The foregoing instrument was acknowledged before me this 22nd day of January, 2007  by
Sari Simpson, Charles Walker and Candice Walker.

My Commission Expires: 09/30/07

Mindy R. Simon
Notary Public

Page 15 of 15          Initials:          Form 3047  1/01

# ADJUSTABLE RATE RIDER

MIN: ████████

**(LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)**

THIS ADJUSTABLE RATE RIDER is made this 22nd day of January, 2007 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to

New Century Mortgage Corporation

("Lender") of the same date and covering the property described in the Security Instrument and located at: 1013 N 35th Street, Richmond, VA 23223

(Property Address)

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of 9.850 %. The unpaid principal of the Note is being amortized over an assumed 40 -year period (the "Amortization Period"). The unpaid principal of the Note is fully due and payable on the maturity date of the Note. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of February, 2009 , and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

NCMC
Six Month LIBOR
Multi-state Balloon Adjustable Rate Rider
RE- 560 (101906)                    Page 1 of 3

Initials ___

**(B)  The Index**

Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal.  The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information.  The Note Holder will give me notice of this choice.

**(C)  Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Six And Forty-five Hundredth(s)**  percentage points ( 6.450 %) to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe on the Change Date in full over the remaining Amortization Period at my new interest rate in substantially equal payments.  The result of this calculation will be the new amount of my monthly payment.  Notwithstanding the Amortization Period applicable to this Note, the entire unpaid principal amount will be fully due and payable on the Maturity Date.

**(D)  Limit on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **11.850** % or less than **9.850** %.  Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One And One-half** percentage points (**1.500** %) from the rate of interest I have been paying for the preceding 6 months.  My interest rate will never be greater than **16.850** %.

**(E)  Effective Date of Changes**

My new interest rate will become effective on each Change Date.  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)  Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change.  The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.  TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower**.  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by

NCMC
Six Month LIBOR
Multi-state Balloon Adjustable Rate Rider
RE- 560 (101906)                          Page 2 of 3

Initials

Lender if such exercise is prohibited by Applicable Law.  Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption.  Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)      _____ (Seal)
SARI SIMPSON                  -Borrower    CHARLES WALKER                -Borrower

_____ (Seal)      _____ (Seal)
CANDICE WALKER                -Borrower                                  -Borrower

_____ (Seal)      _____ (Seal)
                              -Borrower                                  -Borrower

_____ (Seal)      _____ (Seal)
                              -Borrower                                  -Borrower

NCMC
Six Month LIBOR
Multi-state Balloon Adjustable Rate Rider          Page 3 of 3
RE- 560 (101906)

Initials _____

MIN: ███████████

# ADJUSTABLE RATE RIDER ADDENDUM
### (Libor Index - Rate Caps)

This Adjustable Rate Rider Addendum is made this **22nd** day of **January** **2007**,
and is incorporated into and shall be deemed to amend and supplement the Promissory Note (the "Note") and
Mortgage, Deed of Trust or Security Deed (the "Security Instrument") and Adjustable Rate Rider (the
"Rider") of the same date given by the undersigned (the "Borrower") to secure repayment of Borrower's
Note to

**New Century Mortgage Corporation** (the "Lender").

Property securing repayment of the Note is described in the Security Instrument and located at:

**1013 N 35th Street, Richmond, VA 23223**
(Property Address)

To the extent that the provisions of this Adjustable Rate Rider Addendum are inconsistent with the
provisions of the Note and/or Security Instrument and/or Rider, the provisions of this Addendum shall
prevail over and supersede any such inconsistent provisions of the Note and/or Security Instrument and/or
Rider.

In addition to the covenants and agreements made in the Note, Security Instrument, and Rider, Borrower and
Lender further covenant and agree as follows:

**4.    (D) LIMITS ON INTEREST RATE CHANGES**
The interest rate I am required to pay at the first change date will not be greater than
**11.850**% or less than **9.850**%. Thereafter, my interest rate
will never be increased or decreased on any single Change Date by more than
**One And One-half** percentage point(s) ( **1.500**%) from
the rate of interest I have been paying for the preceding **6** months. My interest rate will never be
greater than **16.850**% or less than **9.850**%.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Adjustable Rate Rider Addendum.

_____          _____
**SARI SIMPSON**                                          **CHARLES WALKER**

_____
**CANDICE WALKER**

_____          _____


_____          _____


NCMC
Adjustable Rate Rider Addendum
RE-102    (082296)                    Page 1 of 1

PG 874  JAN 24 8

MIN: ███████

# PREPAYMENT RIDER
# ADJUSTABLE RATE LOAN

This Prepayment Rider is made this **22nd** day of **January** **2007**, and is incorporated into and shall be deemed to amend and supplement the Promissory Note (the "Note") and Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure repayment of Borrower's Note to

**New Century Mortgage Corporation** (the "Lender").

To the extent that the provisions of this Prepayment Rider are inconsistent with the provisions of the Note and/or Security Instrument, the provisions of this rider shall prevail over and shall supersede any such inconsistent provisions of the Note and/or Security Instrument.

In addition to the covenants and agreements made in the Note and Security Instrument, the Borrower and Lender further covenant and agree as follows:

**5. BORROWER RIGHT TO PREPAY**
     I have the right to make payments of principal any time before they are due. A prepayment of all of the unpaid principal is known as a "full prepayment". A prepayment of only part of the unpaid principal is known as a "partial prepayment".

     Except as provided below, I may make a full or partial prepayment at any time. If I make a partial prepayment equal to one or more of my monthly payments, my due date may be advanced no more than one month. If I make any other partial prepayment, I must still make each later payment as it becomes due and in the same amount. I may make a full prepayment at any time. However, if the Principal balance of this Note is $75,000 or less and if within the first 2 year(s) after the execution of the Mortgage, I make any prepayment(s) within any 12-month period the total amount which exceeds TWENTY PERCENT (20%) of the original Principal amount of this loan, I will pay a prepayment charge in an amount equal to one percent (1%) on the amount by which the total of my prepayment(s) within that 12-month period exceeds TWENTY PERCENT (20%) of the original Principal amount of the loan.

     If the Principal balance of this Note exceeds $75,000 and if within the first 2 year(s) after the execution of the Mortgage, I make any prepayment(s) within any 12-month period the total amount of which exceeds TWENTY PERCENT (20%) of the original Principal amount of this loan, I will pay a prepayment charge in an amount equal to two (2%) on the amount by which the total of my prepayment(s) within that 12-month period exceeds TWENTY PERCENT (20%) of the original Principal amount of the loan.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Prepayment Rider.

_____          _____
**SARI SIMPSON**                                          **CHARLES WALKER**

_____          _____
**CANDICE WALKER**

_____          _____

NCMC
Prepay Rider - ARM (VA)
RE-326    (080106)                          Page 1 of 1

PG: 875 JAN 24 6

Schedule "A"

ALL that piece or parcel of land with all improvements thereon, known as No. 1013 North 35th Street (formerly Dickerson Street) lying and being in the City of Richmond, Virginia, situated on the south line of 35th Street, and bounded and described as follows:

BEGINNING at a point on the south line of 35th Street distant 30 feet west of its intersection with the west line of Blakie Street, thence running westwardly along and fronting 30 feet on the south line of 35th Street, and then extending back southwardly from said front between lines parallel to Blakie Street 125 feet to an alley in the rear 14 feet wide.

BEING the same real estate conveyed to Sari Simpson, unmarried, and Charles Walker and Candice Walker, husband and wife, by deed from Lillie S. Harris, dated January 17, 2007, and recorded in the Clerk's Office, Circuit Court, City of Richmond, Virginia, immediately prior to and simultaneously herewith.

INSTRUMENT #070002817
RECORDED IN THE CLERK'S OFFICE OF
CITY OF RICHMOND ON
JANUARY 24, 2007 AT 03:02PM
BEVILL M. DEAN, CLERK

RECORDED BY: JRO

# ADJUSTABLE RATE BALLOON NOTE
## 2 Year Rate Lock
### (LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

| January 22, 2007 | Richmond | Virginia |
|---|---|---|
| [Date] | [City] | [State] |

1013 N 35th Street, Richmond, VA  23223
[Property Address]

## 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ 166,400.00          (this amount is called "Principal"), plus interest, to the order of Lender. Lender is   **New Century Mortgage Corporation**

I will make all payments under this Note in the form of cash, check or money order.
I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **9.850**   %. The interest rate I will pay may change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS
### (A)  Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payments on the first day of each month beginning on          **March 1, 2007**
My monthly payments will be based on an assumed 40          -year amortization period (the "Amortization Period").
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  **02/01/2037**          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  **18400 Von Karman, Suite 1000, Irvine, CA 92612**

or at a different place if required by Note Holder.
### (B)  Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $  **1,393.41**   . This amount may change.

### (C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

NCMC
Adjustable Rate Balloon Note (VA)
RE-523  (011806)

Page 1 of 4

Initials

EXHIBIT B

## 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A)  Change Dates

The interest rate I will pay may change on the first day of **February, 2009**, and on that day every **6th** month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B)  The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C)  Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Six And Forty-five Hundredth(s)** percentage points (**6.450** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe on the Change Date in full over the remaining Amortization Period at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment. Notwithstanding the Amortization Period applicable to this Note, the entire unpaid principal amount will be fully due and payable on the Maturity Date.

### (D)  Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than **11.850%** or less than **9.850%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One And One-half** percentage point(s) (**1.500 %**) from the rate of interest I have been paying for the preceding **6** months. My interest rate will never be greater than **16.850** %.

### (E)  Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F)  Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

NCMC
Adjustable Rate Balloon Note (VA)
RE-523 (011806)

Initials

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor and waive the benefit of the homestead exemption as to the Property described in the Security Instrument (as defined below). "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

Initials

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)
SARI SIMPSON                        -Borrower

_____ (Seal)
CHARLES WALKER                  -Borrower

_____ (Seal)
CANDICE WALKER                   -Borrower

_____ (Seal)
                                           -Borrower

_____ (Seal)
                                           -Borrower

_____ (Seal)
                                           -Borrower

_____ (Seal)
                                           -Borrower

_____ (Seal)
                                           -Borrower

*[Sign Original Only]*

This is to certify that this is the Note described in and secured by a Deed of Trust dated January 22, 2007, on the Property located in Richmond , Virginia.

My Commission Expires: 09/30/07

_____
Notary Public

Pay to the order of, without recourse

New Century Mortgage Corporation
By: _____
     Steve Nagy
     V.P. Records Management

*Ocwen Loan Servicing, LLC*
*P.O. Box 24737*
*West Palm Beach, Florida 33416-4737*
*(Do not send correspondence or payments to the above address.)*    WWW.OCWEN.COM

O C W E N

## Helping Homeowners Is What We Do! ™

Tuesday, October 14, 2014

Sari Simpson
1013 N 35th St
Richmond, VA 23223

**Your executed Loan Modification Agreement!**

Re:    Loan Number: ███████████
       Property Address: 1013 N 35th St | Richmond, VA 23223

Dear Borrower(s):

We are glad to be able to assist all qualifying homeowners save their homes from foreclosure and thank you for sending in your completed Loan Modification Agreement.

Included with this letter is an executed copy of your Loan Modification Agreement to keep for your records.

If you have any questions regarding your Loan Modification Agreement, please call our Customer Care Center at (800) 746-2936 Monday to Friday 8:00 am to 9:00 pm, Saturday 8:00 am to 5:00 pm and Sunday 12:00 pm to 9:00 pm ET, and remember **"Helping Homeowners is what we do!"**

Sincerely,

Ocwen Loan Servicing, LLC

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.    NMLS# 1852*



Ocwen Loan Servicing, LLC
WWW.OCWEN.COM
*Helping Homeowners is What We Do!* ™

1661 Worthington Road, Ste 100
West Palm Beach, FL 33409
Toll Free. (800) 746-2936

## LOAN MODIFICATION AGREEMENT

Ocwen Loan Servicing, LLC ("Ocwen") is offering you this Loan Modification Agreement ("Agreement"), dated 3/28/2014. which modifies the terms of your home loan obligations as described in detail below:

A.     the Mortgage, Deed of Trust, or Security Deed (the "Mortgage"), dated and recorded in the public records of Richmond City County, and

B.     the Note, of the same date and secured by the Mortgage, which covers the real and personal property described in the Mortgage and defined therein as the "Property", located at 1013 N 35th St, Richmond, VA 23223.

Pursuant to our mutual agreement to modify your Note and Mortgage and in consideration of the promises, conditions, and terms set forth below, the parties agree as follows:

1.     You agree that the new principal balance due under your modified Note and the Mortgage will be  $180,155.85. Upon modification, your Note will become contractually current.

2.     You promise to make an initial payment in the amount of  $832.85 on or before 5/1/2014, after which you will commence payments of principal and interest in the amount of  $ 619.62 beginning on 6/1/2014 and continuing on the same day of each succeeding month until all amounts owed under the Note and Modification are paid in full.

3.     You will be required to pay to Ocwen, until such time the loan is paid in full, a sum to provide for payment of amounts due for (i) yearly taxes and assessments which may attain priority over the Security Instrument as a lien on the Property, and (ii) yearly hazard or property insurance premiums, all in accordance with the terms and conditions of the Security Instrument. A waiver of this requirement by Ocwen as of the Effective Date shall not constitute a waiver of such requirement at any future date, and Ocwen specifically reserves the right, in its sole and absolute discretion, to impose such requirement at any time upon written notice to you.

4.     Upon Modification, the annual rate of interest charged on the unpaid principal balance of your loan will be 2.00001% . This rate will remain in effect until the maturity date of your loan.

5.     You promise to make payments of principal and interest on the same day of each succeeding month until 2/1/2037, at which time a final balloon payment in an amount equal to all remaining amounts under the Note and Modification will be due.

6.     You will comply with all other covenants, agreements and requirements of your Mortgage, including without limitation, the covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds and all other payments that you are obligated to make under the Mortgage, except as otherwise provided herein.

7.     If you sell your property, refinance or otherwise payoff your loan during the 12 months following the date of Modification, the Modification will be voidable at the sole option of Ocwen and all amounts owed under the obligations existing prior to the Modification will be due and owing.

8.     You understand and agree that:

    (a)    All the rights and remedies, stipulations and conditions contained in your Mortgage relating to default in the making of payments under the Mortgage will also apply to default in the making of the modified payments here under.

Page 3 of 5

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property.  It is not intended as an attempt to collect a debt from you personally.

*NMLS # 1852*





Ocwen Loan Servicing, LLC
WWW.OCWEN.COM
*Helping Homeowners is What We Do!* ™

1661 Worthington Road, Ste 100
West Palm Beach, FL 33409
Toll Free: (800) 746-2936

(b)     All covenants, agreements, stipulations and conditions in your Note and Mortgage will remain in full force and effect, except as herein modified, and none of the your obligations or liabilities under your Note and Mortgage will be diminished or released by any provisions hereof, nor will this Agreement in any way impair, diminish or affect any of Ocwen's rights under or remedies on your Note and Mortgage, whether such rights or remedies arise there under or by operation of law. Also, all rights of recourse to which Ocwen is presently entitled against any property or any other persons in any way obligated for, or liable on, your Note and Mortgage are expressly reserved by Ocwen.

(c)     Any expenses incurred in connection with the servicing of your loan, but not yet charged to your account as of the date of this Agreement, may be charged to your account after the date of this Agreement.

(d)     Nothing in this Agreement will be understood or construed to be a satisfaction or release in whole or in part of your Note and Mortgage.

(e)     You agree to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Ocwen, will bind and inure to your heirs, executors, administrators and assigns.

(f)     You understand that this agreement is legally binding and that it affects your rights. You confirm that you have had the opportunity to obtain independent legal counsel concerning this Agreement and are signing this Agreement voluntarily and with full understanding of its contents and meaning.

(g)     Corrections and Omissions: You agree to execute such other and further documents as may be reasonably necessary to consummate the transactions contemplated herein or to perfect the liens and security interests intended to secure the payment of the loan evidenced by the Note.

_____
Ocwen Loan Servicing, LLC

By: _____
        Authorized Officer

**Jacob Rodriguez**

_____
Sari Simpson

_____
Charles Walker

OCT 1 4 2014

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.
NMLS # 1852



Ocwen Loan Servicing, LLC
**WWW.OCWEN.COM**
*Helping Homeowners is What We Do! ™*

1661 Worthington Road, Ste 100
West Palm Beach, FL 33409
Toll Free: (800) 746-2936

3/28/2014

Sari Simpson
Charles Walker
1013 N 35th St
Richmond 23223

### BALLOONDISCLOSURE

Loan Number:
Property Address:    1013 N 35th St, Richmond, VA 23223

The loan modification for which you have applied contains a balloon provision. This means that even if you make all payments full and on time, the loan will not be paid in full by the final payment date. Your estimated balloon payment amount is  $69,864.92 and will be due in a single payment on 2/1/2037, provided that all payments are made in accordance with the loan terms and the interest rate does not change for the entire loan term. The balloon payment may vary depending on your payment history, and, if you have an adjustable rate mortgage, any interest rate changes that occur during the life of the loan.

Neither Ocwen Loan Servicing, LLC nor any lender to which your loan is transferred or assigned is under any obligation to finance the amount of the balloon payment. In addition, the value of the real estate securing this loan may change during the term of the loan. On the date the balloon payment becomes due, the value of the real estate may not be sufficient to secure a new loan in an amount equal to the balloon payment.

I/we have read the above disclosure and acknowledge receiving a copy by signing below.

Ocwen Loan Servicing, LLC

By: _____
       Authorized Officer

**Jacob Rodriguez**

_____
Sari Simpson

_____
Charles Walker

OCT 1 4 2014



This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property.  It is not intended as an attempt to collect a debt from you personally.
                                                                                                    *NMLS # 1852*

APN #
Prepared by Joe Simmons
When Recorded Mail To
Ocwen Loan Servicing, LLC
5720 Premier Park Dr,
West Palm Beach, FL 33407
Phone Number 561-682-8835

Attorney Code. 01079 BR
MIN
MERS Ph.#: (888) 679 – 6377

## ASSIGNMENT OF DEED OF TRUST
## COMMONWEALTH OF VIRGINIA

This **ASSIGNMENT OF DEED OF TRUST** from **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS)**, as nominee for NEW CENTURY MORTGAGE COPORATION, whose address is PO Box 2026 Flint, MI 48501-2026, its successors and assigns, ("Assignor) to **U.S. BANK, NATIONAL ASSOCIATION, AS TRUSTEE UNDER THE POOLING AND SERVICING AGREEMENT DATED AS OF MARCH 1, 2007, GSAMP TRUST 2007-HE2, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-HE2**, whose address is c/o Ocwen Loan Servicing, LLC, 5720 Premier Park Dr, West Palm Beach, FL 33407, (Assignee) all its rights, title and interest in and to a certain mortgage duly recorded in the Office of the County Recorder of **RICHMOND (CITY)**, State of **VIRGINIA**, as follows;

Trustor: SARI SIMPSON AND CHARLES WALKER AND CANDICE WALKER
Trustee: STEPHEN C. CONTE
Beneficiary: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ACTING SOLELY AS NOMINEE FOR NEW CENTURY MORTGAGE COPORATION
Document Date: JANUARY 22, 2007
Amount: $166,400.00
Recording Date: JANUARY 24, 2007
Page/Folio: 855
Instrument : 070002817
Property address: 1013 N 35TH STREET, RICHMOND/RICHMOND CITY, VA 23223
Property described as follows:
### SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

This Assignment is made without recourse, representation or warranty.

DATED: SEPTEMBER 19, 2013

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS)**

BY:

NAME:    **Leticia N. Arias**
TITLE:   Assistant Secretary

Witnesses:

(1)
      Debra Spruill

(2)
      Victoria Vazquez

STATE OF FLORIDA         )
                         )ss.
COUNTY OF PALM BEACH     )

The foregoing instrument was acknowledged before me this 19TH day of SEPTEMBER 2013, by _____Leticia N. Arias_____, the Assistant Secretary at MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., on behalf of the corporation. He/She is personally known to me.

Notary Public –
State of Florida    **Christian J. Ferrer**

Notary Public State of Florida
Christian J Ferrer
My Commission EE 861670
Expires 12/30/2016

APN █
Prepared by: Joe Simmons
When Recorded Mail To.
Ocwen Loan Servicing,LLC
5720 Premier Park Dr.
West Palm Beach, FL 33407
Phone Number: 561-682-8835
█████
Attorney Code: 01079 BR
MIN: ████████
MERS Ph.#: (888) 679 – 6377

EXHIBIT "A"

ALL that piece or parcel of land with all improvements thereon, known as No. 1013 North 35th Street (formerly Dickerson Street) lying and being in the City of Richmond, Virginia, situated on the south line of 35th Street, and bounded and described as follows:

BEGINNING at a point on the south line of 35th Street distant 30 feet west of its intersection with the west line of Blakie Street, thence running westwardly along and fronting 30 feet on the south line of 35th Street, and then extending back southwardly from said front between lines parallel to Blakie Street 125 feet to an alley in the rear 14 feet wide.

BEING the same real estate conveyed to Sari Simpson, unmarried, and Charles Walker and Candice Walker, husband and wife, by deed from Lillie S. Harris, dated January 17, 2007, and recorded in the Clerk's Office, Circuit Court, City of Richmond, Virginia, immediately prior to and simultaneously herewith.